1  **FUCHS LAW GROUP, APC**
   JOHN R. FUCHS, ESQ.     (SBN 82032)
2      jrfuchs@earthlink.net
   GAIL S. GILFILLAN, ESQ.     (SBN 168884)
3      ggilfil@hotmail.com
   12100 Wilshire Boulevard, Suite 800
4  Los Angeles, California 90025-7140
   Telephone (310) 826-9700
5
   Attorneys for Plaintiff
6  **SURAT SINGH**

7

8                **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10

11  SURAT SINGH, an individual        )   CASE NO. 8:17-cv-1178
                                      )
12           Plaintiff,               )   **COMPLAINT FOR:**
                                      )
13      v.                            )   **(1) VIOLATION OF THE**
                                      )   **RACKETEER INFLUENCED**
14                                    )   **AND CORRUPT**
    BANK OF NEW YORK MELLON, f/k/a    )   **ORGANIZATIONS ACT,**
15  THE BANK OF NEW YORK, AS          )   **18 U.S.C. §§ 1962(c);**
    TRUSTEE, ON BEHALF OF THE         )
16  HOLDERS OF THE ALTERNATIVE        )   **(2) VIOLATION OF THE**
    LOAN TRUST 2005-59, MORTGAGE      )   **RACKETEER INFLUENCED**
17  PASS THROUGH CERTIFICATES,        )   **AND CORRUPT**
    CORELOGIC, INC., SELECT           )   **ORGANIZATIONS ACT,**
18  PORTFOLIO SERVICING, INC.,        )   **18 U.S.C. §§ 1962(d);**
    BAYVIEW LOAN SERVICING, LLC,      )
19  BANK OF AMERICA, N.A., and        )   **(3) SLANDER OF TITLE;**
    QUALITY LOAN SERVICE              )
20  CORPORATION,                      )   **(4) WRONGFUL FORECLOSURE;**
                                      )
21                                    )   **(5) FRAUDULENT**
             Defendants.              )   **MISREPRESENTATION; AND**
22  _____  )
                                          **(6) FRAUDULENT**
23                                        **CONCEALMENT.**

24                                        **FOR DAMAGES AND**
                                          **TEMPORARY, PRELIMINARY,**
25                                        **AND PERMANENT**
                                          **INJUNCTIVE RELIEF**
26
                                          **PLAINTIFF DEMANDS TRIAL**
27                                        **BY JURY**

28

                                      1
_____
          **COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL**
             **FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

Comes now Plaintiff **SURAT SINGH**, an individual ("Plaintiff"), complains and alleges against Defendants **BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ALTERNATIVE LOAN TRUST 2005-59, MORTGAGE PASS THROUGH CERTIFICATES, CORELOGIC, INC., SELECT PORTFOLIO SERVICING, INC., BAYVIEW LOAN SERVICING, LLC, BANK OF AMERICA, N.A., AND QUALITY LOAN SERVICE CORPORATION**, based upon information and belief, the investigation of counsel, Plaintiff's own investigation and his personal knowledge.

## NATURE OF THE ACTION

1.      Plaintiff is informed and believes, and based thereon alleges, that prior to its collapse in 2008, Countrywide Home Loans, Inc. ("Countrywide") was the largest mortgage lender in the United States, having originated $490 billion in mortgage loans in 2005, over $450 billion in 2006 and over $408 billion in 2007, which allowed Countrywide to dominate the subprime lending market.  However, Countrywide's lending practices during the housing boom in the mid-2000's, were regularly referred to as "predatory lending," including for example "teaser rates" and "bait and switch" practices, to lure borrowers with the promise of a conventional fixed interest-rate loan and then switching the borrower into a high-risk adjustable interest rate loan known as a "Pay Option Adjustable Rate Mortgage," or "Pay Option ARM," without fully and clearly disclosing that the low payments were insufficient to pay the interest in full, leading to maximum yearly increases in the payment, along with negative amortization that adds to the principal after a certain length of time, generally five years.

2.      When the housing market collapsed in 2008, Countrywide merged with Bank of America in July 2008, allegedly to prevent Countrywide from filing for bankruptcy and completely disrupting the housing market and the lending industry.

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

After the merger, Countrywide's fraudulent, illegal and predatory lending practices resulted in massive litigation and foreclosure costs estimated to exceed $50 billion to Bank of America. Thousands of class actions and actions by individual borrowers before and after foreclosures, were filed, many resulting in settlements costing Bank of America, Bank of America, N.A. and Countrywide more billions of dollars in settlements and judgments.

3. In addition, the U.S. Department of Justice brought a lawsuit against Countrywide and Bank of America, seeking damages in the billions of dollars. These multiple actions against Bank of America, Bank of America, N.A. and Countrywide by state attorneys general and the United States Department of Justice and other entities within the Federal Government included without limitation an action by the Comptroller of the Currency of the United States of America examining the residential real estate mortgage foreclosure processes of Bank of America, N.A., an action entitled *United States of America v. Bank of America N.A. d/b/a Bank of America Home Loans*, filed as Case No. 3:12-CV-605 in the Western District of North Carolina, that resulted in a Consent Decree, an action entitled *United States of America v. Bank of America Corp et al.*, filed as Case No. 1:12-cv-00361 in the United States District Court for the District of Columbia, that resulted in a Consent Judgment, and an action by the Department of Justice in the United States District Court in New York, seeking damages of close to $1.0 billion from Bank of America and Countrywide.

4. Plaintiff is informed and believes, and based thereon alleges, that as a result of the false and fraudulent predatory loan practices of Countrywide, the liability for which was assumed by Bank of America and Bank of America, N.A. when Countrywide was merged into Bank of America in 2008, Bank of America and Bank of America, N.A. sought to unload the liability on multiple mortgage investment trusts, into which hundreds or even thousands of individual mortgages were bundled into investment vehicles known as Residential Mortgage Backed Securities, and then

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

sold to unwitting and unsuspecting investors, with the hope that any losses from defaulted mortgages would be offset by the profits from the mortgages that were paid promptly and ultimately paid off.  However, according to charges filed by the Securities and Exchange Commission in 2013, Bank of America's then-CEO, referred to such bundled loans being sold as Residential Mortgage Backed Securities, as "toxic waste," because he knew that such loans presented far greater risks of delinquencies and early defaults. Plaintiff is further informed and believes, and based thereon alleges, that also as a direct result of Countrywide's false and fraudulent predatory loan practices, hundreds of thousands of borrowers defaulted on the high-risk loans made by Countrywide, causing substantial losses to the trusts and requiring the investment trusts to initiate foreclosure proceedings, in many cases where the value of the property was less than to amount due on the loan.

5.   Plaintiff is further informed and believes, and based thereon alleges, that because of the difficulty in obtaining legitimate assignments of the promissory notes, and most importantly, the deeds of trust or other security instruments that provide the legal basis to initiate foreclosure proceedings, for hundreds of thousands of properties where the borrowers were in default, Bank of America and Bank of America, N.A. created a fraudulent scheme to use mechanical robo-signing machines to affix forged, false and fraudulent robo-signed "signatures" of dozens of people who were purportedly "employees" of Mortgage Electronic Registration Systems ("MERS"), which was and is a system developed by the mortgage industry, purporting to allow MERS to act as an agent, nominee, trustee and/or beneficiary under deeds of trust on behalf of a lender, in order to circumvent the recording laws and statutes enacted by many states, including California.

6.   Plaintiff is further informed and believes, and based thereon alleges, that these knowingly false, fraudulent and forged robo-signed "signatures" on hundreds of thousands of assignments of deeds of trust and other security documents were then used by Bank of America, Bank of America, N.A., Bank of New York Mellon and

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

4

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

1  other lenders to wrongfully and illegally foreclose on the real properties of borrowers
2  in default, when in fact these robo-signed assignments of deeds of trust and other
3  security documents were false and therefore *void ab initio* and were legally
4  ineffective to convey the security interest in the properties that they purported to
5  convey, rendering the entire foreclosure process illegal, because such lenders did not
6  in fact have valid security interests in the properties on which they were foreclosing
7  and were in actuality fraudulently utilizing the foreclosure process to steal the real
8  properties owned by these borrowers, in the guise of foreclosing on defaulting
9  borrowers.

10      7.    Plaintiff was and is one of the unfortunate borrowers whose deed of trust
11  was purportedly "assigned" by Bank of America, in or about October 2011, through
12  Bank of America's fraudulent document preparation service in South Carolina,
13  CoreLogic, from the original lender, SCME Mortgage Bankers, Inc., to Bank of New
14  York Mellon, f/k/a the Bank Of New York, as Trustee, on Behalf of the Holders of
15  the Alternative Loan Trust 2005-59, Mortgage Pass Through Certificates, which
16  "assignment" was based on the fraudulent and forged robo-signed signature of
17  "Christopher Herrera" and the fraudulent Notary Jurat purportedly signed by "Norma
18  Rojas."

19      8.    Plaintiff is further informed and believes, and based thereon alleges, that
20  "Christopher Herrera" and "Norma Rojas" are two of more than a dozen fraudulent
21  names that were regularly forged by Bank of America, Bank of America, NT, N.A.
22  and CoreLogic on such robo-signed "Assignments of Deeds of Trust," thus rendering
23  these "Assignments" forged, false, fraudulent and *void ab initio* and therefore are not
24  legally valid to convey the security interest in real property that they purport to
25  convey, as was determined by Judge Theodore Howard in the Orange County
26  Superior Court in February 2016, when Judge Howard denied a Motion for Attorneys
27  Fees that was based on the robo-signed "Assignment of Deed of Trust," in a State
28  Court Action by Plaintiff, expressly finding that Bank of New York Mellon, the party

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL
FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

1   who had purported to commence the foreclosure of Plaintiff's real property, did not

2   have a valid and legal security interest in Plaintiff's real property in Newport Beach,

3   California.

4        9.    Plaintiff is therefore bringing this action asserting that such acts and

5   omissions by Bank of America, Bank of America, N.A., CoreLogic, Bank of New

6   York Mellon, SPS, Bayview and other lenders and servicers, in commencing

7   foreclosure of his real property using a forged, invalid and void "Assignment of Deed

8   of Trust," constitutes a pattern of racketeering activities through mail fraud and wire

9   fraud, in violation of the Racketeer Influenced and Corrupt Organizations Act (the

10   "RICO Statute"), 18 U.S.C. § 1962, as well as other wrongdoing, all as alleged

11   herein. By this action, Plaintiff seeks damages and equitable relief, including without

12   limitation, treble his monetary damages, restitution, injunctive relief, punitive

13   damages, costs and expenses, including attorneys' fees and expert fees, interest and

14   any additional relief that this Court determines to be necessary and appropriate to

15   provide complete relief to the Plaintiff.

16

17   **JURISDICTION AND VENUE**

18        10.    This Court has original jurisdiction over the subject matter of this action

19   pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under the RICO Statute,

20   18 U.S.C. §§ 1962 and 1965, and because the damages sought by Plaintiff herein

21   exceed $1,000,000.

22

23   **THE PARTIES**

24        11.    At all times relevant herein, Plaintiff **SURAT SINGH** ("Plaintiff") was

25   and is an individual living in Newport Beach, in the County of Orange, State of

26   California, was 63 years old as of November 2011, was originally born in the country

27   of India and has emigrated to the United States. At all times relevant herein, Plaintiff

28   was and is the owner of the residential real property located at 527 Westminster

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

6

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL
FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

Avenue in the City of Newport Beach, County of Orange, State of California (the "Property")

12.    Plaintiff is informed and believes, and based thereon alleges, that at all times relevant herein, Defendant **BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ALTERNATIVE LOAN TRUST 2005-59, MORTGAGE PASS THROUGH CERTIFICATES** (collectively referred to herein as "Mellon"), is believed to be a national banking corporation or association incorporated and existing under the laws of the State of New York, that is licensed to do business and doing business in the State of California and was and is believed to be formerly known as The Bank of New York as successor in interest to JP Morgan Chase Bank NA as Trustee for the Alternative Loan Trust 2005-59, Mortgage Pass Through Certificates, which entity is believed to be the purchaser and actual and current holder of the promissory note evidencing the loan to Plaintiff that is at issue herein and is purportedly secured by the residential real property located at 527 Westminster Avenue in the City of Newport Beach, State of California.

13.    At all times relevant herein, Defendant **SELECT PORTFOLIO SERVICING, INC.** ("SPS") was and is a corporation with its principal place of business in the State of Utah and was and is duly registered and authorized to do business in the State of California, was and is doing business in the County of Orange, as a servicer of real property loans, and was and is the servicer of the loan secured by Plaintiff's Property until on or about January 30, 2017.

14.    At all times relevant herein, Defendant **BAYVIEW LOAN SERVICING LLC** ("Bayview") was and is a Delaware corporation with it principal place of business in Coral Gables, Florida, and was and is duly registered and authorized to do business in the State of California, was and is doing business in the County of Orange, as a servicer of real property loans and from and after January 30, 2017, Bayview was and is the servicer of the loan secured by Plaintiff's Property.

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

7

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

15. At all times relevant herein, Defendant **BANK OF AMERICA, N.A.** ("BANA") was and is a federally chartered bank and the principal bank subsidiary of Bank of America, a Delaware corporation with it principal place of business in Charlotte, North Carolina, and was and is duly registered and authorized to do business in the State of California, and was and is doing business in the County of Orange. Plaintiff is informed and believes that Countrywide Home Loans, Inc. ("Countrywide") was formerly a separate entity providing residential real property loans and was a major contributor to the mortgage meltdown in 2008, and as a result, Countrywide was purchased by and/or merged into Bank of America on July 1, 2008. Plaintiff is informed and believes, and based thereon alleges, that despite the merger, Countrywide continued doing business for the benefit of Defendants Bank of America and BANA, until April of 2009, when Bank of America ceased using the Countrywide name, and that the entity formerly known as Countrywide, now operates under the trade name "Bank of America Home Loans." Plaintiff is informed and believes, and based thereon alleges, that Bank of America and BANA are the successors-in-interest to Countrywide as a result of the merger in 2008, have assumed the rights and liabilities on Countrywide's loans, and have thus assumed liability for the acts and omissions of Countrywide and its agents, correspondents and business partners, as alleged herein. Plaintiff is informed and believes, and based thereon alleges, that Countrywide and Bank of America Home Loans are the same entity operating under the Countrywide name until April 2009, that Bank of America Home Loans is for all intents and purposes the continuation of Countrywide, operating under the name Bank of America Home Loans, and Plaintiff therefore refers herein to this entity operating under two names, as "Countrywide."

16. Plaintiff is informed and believes that at all times relevant herein, Defendant **CORELOGIC, INC.** was and is a corporation organized and existing under the laws of the State of Delaware, was and is doing business in the Chapin, South Carolina, as a document preparation service utilized by Bank of America and

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

BANA to prepare assignments of deeds of trust and and related documents to purportedly transfer security instruments from Bank of America and BANA to other entities, many if not most of which assignments and other documents were robo-signed with forged "signatures" and/or were knowingly false and fraudulent and therefore *void ab initio*, illegal and invalid to convey the security interests that they purported to convey.

17.     At all times relevant herein, Defendant **QUALITY LOAN SERVICE CORPORATION** ("QLS") was and is a corporation organized and existing under the laws of the State of California, with its principal place of business in San Diego, and was and is doing business in the County of Orange, as a trustee on deeds of trust, for the purposes of recording Notices of Default, Notices of Trustee's Sales, and otherwise acting as an agent for and on behalf of beneficiaries in the foreclosure process.  Plaintiff is informed and believes, and based thereon alleges, that on May 19, 2014, QLS recorded a Notice of Default and Election to Sell Under Deed of Trust, on behalf of Mellon, alleging that Plaintiff owed $211,088.90 to Mellon, claimed to be due as of May 16, 2014.

18.     Plaintiff is informed and believes, and based thereon alleges, that, at all times relevant herein, Defendants Bank of America, BANA, CoreLogic, SPS, Bayview, Mellon and QLS, and each of them, were and are the representatives, agents and employees of each other, and such Defendants, and each of them, during the acts hereinafter mentioned, were and are acting within the course and scope of their authority as such representatives, agents and employees and were and are acting at the direction and with the consent of such co-defendants, and each of them.

**STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION**

19.     Plaintiff is informed and believes, and based thereon alleges, that prior to its collapse in 2008, Countrywide was the largest mortgage lender in the United States, having originated $490 billion in mortgage loans in 2005, over $450 billion

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

in 2006 and over $408 billion in 2007, which allowed Countrywide to dominate the subprime lending market.  However, Countrywide's lending practices during the housing boom in the mid-2000's, were regularly referred to as "predatory lending," including for example "teaser rates" and "bait and switch" practices to lure borrowers with a conventional fixed interest-rate loan and then switching the borrower into a high-risk adjustable interest rate loan known as a "Pay Option Adjustable Rate Mortgage," or "Pay Option ARM," without fully and clearly disclosing that the low payments were insufficient to pay the interest in full, leading to yearly increases in the payment and negative amortization that adds to the principal after a certain length of time, generally five years.

20.     When the housing market collapsed in 2008, Countrywide merged with Bank of America in July 2008, allegedly to prevent Countrywide from filing for bankruptcy and completely disrupting the housing market and the lending industry. After the merger, Countrywide's fraudulent, illegal and predatory lending practices resulted in massive litigation and foreclosure costs estimated to exceed $50 billion to Bank of America.  Thousands of class actions and actions by individual borrowers before and after foreclosures, were filed, many resulting in settlements costing Bank of America, BANA and Countrywide more billions of dollars in settlements and judgments.

21.     In fact, the evidence of the massive mortgage fraud that resulted in the mortgage meltdown in 2008, was so overwhelming, that former President Barack Obama created the Financial Fraud Enforcement Task Force (the "FFETF") to investigate the lenders and others whose conduct had played a role in the meltdown, and by 2014, according to former Attorney General Eric Holder, the FFETF had brought over 60 cases against financial institutions involved in mortgage fraud, resulting in recoveries totaling over $85 billion.  Three of the largest settlements achieved were against Bank of America, Citi and JB Morgan Chase.

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

22.   These multiple actions against Bank of America, BANA and Countrywide by state attorneys general and the United States Department of Justice and other entities within the Federal Government included without limitation the following:

(1)   Prior to 2011, the Comptroller of the Currency of the United States of America conducted an examination of the residential real estate mortgage foreclosure processes of Bank of America, N.A., and after the Comptroller identified "certain deficiencies and unsafe and unsound practices in residential mortgage servicing" and in the Bank's initiation and handling of foreclosure proceedings, Bank of America entered into a Consent Order dated as of April 13, 2011, in which the Comptroller specifically found that in connection with certain foreclosures of loans in its residential mortgage servicing portfolio, Bank of America:

(A)   Filed or caused to be filed in state and federal courts affidavits of its employees or employees of third-party service providers making various assertions regarding the ownership of mortgage notes and mortgages, the amounts due, the fees and expenses chargeable to the borrower, allegedly based on personal knowledge or review of the relevant books and records, that in fact were based neither on personal knowledge nor on review of the relevant books and records;

(B)   Filed or caused to be filed in state and federal courts numerous affidavits and other documents that were not properly notarized, including those not actually signed or affirmed in the presence of the notary;

(C)   Litigated foreclosure proceedings and initiated non-judicial foreclosure proceedings without always ensuring that either the promissory note or the mortgage document was properly endorsed or assigned and, if necessary, in the possession of the appropriate party at

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

11

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

the appropriate time;

        (D)    Failed to devote sufficient financial, staffing and managerial resources to ensure proper administration of its foreclosure processes;

        (E)    Failed to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training; and

        (F)    Failed to sufficiently oversee outside counsel and other third-party providers handling foreclosure-related services.  A true and correct copy of the Consent Order between the Comptroller of the Currency of the United States of America and Bank of America, N.A., dated as of April 13, 2011, is attached as Exhibit 1 hereto and incorporated herein as though set forth in full.

        (2)    In an action entitled *United States of America v. Bank of America N.A. D/B/A Bank of America Home Loans*, filed as Case No. 3:12-CV-605 in the Western District of North Carolina, Bank of America and BANA entered into a Consent Order dated September 13, 2012, to resolve the claims by the United States that Bank of America and BANA, "in processing and underwriting mortgage loans, has engaged in a pattern or practice of violating the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, by discriminating on the basis disability, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f, by discriminating on the basis of public assistance," and to resolve the claims of certain named individuals under 42 U.S.C. § 3612(o). A true and correct copy of the Consent Order between the United States of America and Bank of America, N.A., dated as of September 13, 2012, is attached as Exhibit 2 hereto and incorporated herein as though set forth in full.

        (3)    In an action entitled *United States of America v. Bank of America Corp et al.*, filed as Case No. 1:12-cv-00361 in the United States District Court

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

for the District of Columbia, Bank of America Corp, Bank of America and BANA entered into a Consent Judgment filed on April 12, 2012, by and between the United States and the Attorneys General of 49 States and the District of Columbia, to resolve claims by the United States and these States and the District of Columbia that Bank of America, N.A., BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, L.P., Countrywide Home Loans, Inc., Countrywide Financial Corporation, Countrywide Mortgage Ventures, LLC and Countrywide Bank, FSB "violated, among other laws, the Unfair and Deceptive Acts and Practices laws of the Plaintiff States, the False Claims Act, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, the Servicemembers Civil Relief Act and the Bankruptcy Code and Federal Rules of Bankruptcy procedure;" as part of this Consent Judgment, Bank of America Corp and the other defendants:

(A)   Agreed to pay into an escrow account the sum of $2,382,415,075, to provide cash payments of $1,489,813,925 to borrowers whose homes were sold or taken in foreclosure; and

(B)   Agreed to provide $7,626,200,000 of relief to consumers who meet certain eligibility criteria and $948,000,000 of refinancing relief to other consumers who meet the eligibility criteria, to remediate harms allegedly caused by the alleged unlawful conduct of the Defendants.  A true and correct copy of the Consent Judgment between the United States of America and these Defendants filed on April 4, 2012, is attached as Exhibit 3 hereto and incorporated herein as though set forth in full.

(4)   In an action against Bank of America and Countrywide in Federal District Court in New York, brought by the United States Department of Justice (the "DOJ Action"), under the False Claims Act, the Department of Justice alleged that Bank of America and Countrywide had engaged in a

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

practice known internally at Countrywide as the "Hustle," whereby Countrywide churned out risky loans and then sold them to two Government Sponsored Entities, Freddie Mac and Fannie Mae, by intentionally and falsely representing that these were high-quality loans, when in fact they were high-risk high-profit loans made to unqualified borrowers without any concern for the borrowers' ability to repay the loan, and had principal balances that exceeded the value of the secured property, resulting in a significant number of defaults and foreclosures and causing damages to Freddie Mac and Fannie Mae in the hundreds of millions of dollars.  The evidence in that action revealed that because Countrywide was one of the largest mortgage companies in the nation from 2004 through 2006, it helped to precipitate the housing melt-down in 2008, by making such high-risk high-profit adjustable rate residential real property loans to borrowers, and by then selling those loans to Freddie Mac and Fannie Mae, knowing that these were problem loans but instead intentionally misrepresenting that these were high-quality loans.

(5)     In a press release from the U.S. Department of Justice dated August 21, 2014, the Attorney General announced that the Department of Justice had "reached a $16.64 billion settlement with Bank of America Corporation–the largest civil settlement with a single entity in American history–to resolve federal and state claims against Bank of America and its former and current subsidiaries, including Countrywide Financial Corporation and Merrill Lynch.  The settlement included an agreement by Bank of America to pay a $5 billion penalty under the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA)–the largest FIRREA penalty ever–and provide billions of dollars of relief to struggling homeowners, including funds that will help defray tax liability as a result of mortgage modification, forbearance or forgiveness.  The settlement does not release individuals from civil charges, nor does it absolve Bank of America, its current or former subsidiaries and

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

affiliates or any individuals from potential criminal prosecution." A true and correct copy of the U.S. Department of Justice Press Release dated August 21, 2014, is attached as Exhibit 4 hereto and incorporated herein as though set forth in full.

(6)    Plaintiff is informed and believes, and based thereon alleges, that despite these actions against and the settlements with multiple financial institutions since 2008, there are ongoing investigations being conducted by the FBI in Florida and in Los Angeles, including an investigation into the complaints of mortgage fraud submitted by Plaintiff to the FBI, reciting the facts that are alleged herein.

23.    With the foregoing as the background and context, this lawsuit involves and concerns title to the residential real property owned by Plaintiff and located at 527 Westminster Avenue in the City of Newport Beach, County of Orange, State of California (the "Property").  At all relevant times, the Property was and is the principal residence of Plaintiff.  The Property is more particularly described as:

"Lot 19 in Block 2 of Tract No. 27, Boulevard Addition, in the city of Newport Beach, County of Orange, State of California, as shown on a map recorded in Book 9, Page 26, of Miscellaneous Maps, in the Office of the County Recorder of said County, A.P.N. 425-293-17."

24.    In June 2005, Plaintiff obtained a loan in the amount of $1.1 million, secured by a Deed of Trust on the Property, from SCME Mortgage Bankers, Inc., that he thought was a fixed-rate 30-year loan but turned out to be a Pay Option ARM, withe negative amortization (the "Loan").  Within 30 days after the Loan was made, it was sold to Countrywide, which was a "correspondent lender" with SCME.  In 2006, while making payments on the Loan, Plaintiff decided to build a second residence on the rear portion of the Property, without realizing that the Deed of Trust he signed in June 2005 provided that the lender's security interest extended to any additions and improvements to the Property.

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

15

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

25.     Thus, without realizing that the second residence could be foreclosed upon if he defaulted on the Loan, Plaintiff obtained a building permit, and in 2006 and 2007, Plaintiff caused to be constructed on the rear portion of the Property, a brand-new three-bedroom, two-bath, four-car garage residence, at a cost of $625,000 that was entirely paid by Plaintiff using his own and borrowed funds.  Following the construction of this new residence, the City of Newport Beach designated the original residence on the Property as 527A Westminster Avenue and designated the new residence on the Property as 527B Westminster Avenue.  In October 2007, there was a new appraisal on the Property that estimated the value of the Property with both residence at $1,200,000, or double the amount of the original Loan obtained by Plaintiff two years earlier.

26.     By early 2009, with the housing and loan markets having collapsed in 2008,  and with Countrywide have been merged into Bank of America but still doing business as Countrywide, Countrywide offered Plaintiff a loan modification.  It was in the course of Plaintiff's discussions with Countrywide in February 2009, that Plaintiff learned that the Loan was a Pay Option ARM, that had accrued more than $132,000 in interest since commencement in June 2005.  Because the Loan payments would have doubled at the end of five years from the date of the Loan, Plaintiff believed that he had no choice but to accept the Loan Modification, so he signed a Loan Modification Agreement as of February 26, 2009, effective on April 1, 2009, on the terms unilaterally dictated by Countrywide without any negotiation or even any opportunity for negotiation (the "Loan Modification Agreement"), with a new principal balance of $1,231,990.10, a new interest rate of 4.25 % and a new fixed monthly payment of $4,363.30, beginning on May 1, 2009 (the "Modified Loan"), in order to avoid the loss of the Property and the loss of the equity that he had built up in the Property, primarily by building a new residence on the Property.  A true and correct copy of the Loan Modification Agreement is attached hereto as Exhibit 5 and incorporated herein as though set forth in full.

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

27.     Plaintiff dutifully made his monthly payment of $4,383 to $4,385, for more than two and a half years.  However, in each year from 2005 to 2008, Plaintiff learned that his annual property taxes were increasing, first by only about $200 annually, but by 2008, the property taxes had increased by nearly 50 %, from $13,177 in 2005, to $18,165 in 2008 and 2009.  Plaintiff believed that the Orange County Tax Assessor had reassessed the Property, based on the new residence Plaintiff constructed in 2007, and then imposed these increased taxes based on a value of nearly $1.5 million, which Plaintiff believed was in excess of the actual value of the Property.

28.     As a result, in September 2008, Plaintiff contested the Tax Assessor's valuation by filing an Application for Changed Assessment, and he declined to pay the increased property taxes for the 2009-2010 tax year.  In September 2009, Plaintiff then filed a second Application for Changed Assessment, and he declined to pay the increased property taxes for the 2010-2011 tax year, while his appeal of the improper assessment was pending.

29.     However, in 2011, BANA paid $57,851.67 to the Orange County Tax Collector, and it did so secretly, without either any notice to, or the consent of, Plaintiff, in direct breach and violation of the Deed of Trust, because the Deed of Trust provides that the lender can only pay a claim that could become a senior lien, unless the borrower is contesting the claim.  Here, Plaintiff had in fact filed appeals of the increased taxes, so BANA did not have the legal right to pay the property taxes while the appeals were pending.  Then, in March 2012, again secretly, without either any notice to or the consent of Plaintiff, and again in direct breach and violation of the Deed of Trust, BANA paid another $6,786.06 to the Orange County Tax Collector, bringing the total of tax payments allegedly made by BANA or Bank of America Homes Loans on Plaintiff's Property, to $64,637.73.

30.     From 2009 through 2011, Plaintiff wrote a number of letters to Brian Moynihan, the CEO of Bank of America, seeking information regarding his original

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

17

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

Loan that he thought was a fixed rate loan but turned out to be a Pay Option ARM, but he received no response. Instead, sometime in mid to late 2011, the servicing of Plaintiff's Modified Loan was transferred from Bank of America to Defendant Select Portfolio Servicing, Inc. ("SPS"), and Plaintiff was advised that from that date onward, he was required to send his payments to SPS. Thereafter, Plaintiff repeatedly requested evidence from SPS that it had the authority to act on behalf of BANA and Bank of America Home Loans, but nothing was ever provided.

31.     Plaintiff is informed and believes, and based thereon alleges, that the transfer of the servicing rights on residential real property loans, annually and sometimes more often than annually, such as was done here by BANA and Bank of America Home Loans, in 2011, 2012 and 2013, is part of a pattern and practice by Bank of America, BANA and other lenders, particularly when the borrower is in default or there is a dispute over the principal amount of the loan, or when the borrower requests a loan modification, to intentionally confuse borrowers, to avoid having to respond to requests for documents and information and to avoid having to provide a "single point of contact," as is required by the California Homeowner Bill of Rights ("CHBR") that became effective in 2013, such as those multiple requests for information and explanations made by Plaintiff in his letter-writing campaign, from 2009 through 2011.

32.     After BANA had paid the increased property taxes on Plaintiff's Property, in 2011, without his knowledge or consent, BANA and/or SPS then unilaterally and improperly raised Plaintiff's monthly payment to $6,600, without explanation and despite a provision in the Loan Modification Agreement that fixed his payment at $4,363.30, and demanded that Plaintiff pay the new amount. Having no choice but to comply, again because of the fear that BANA would foreclose on the Property and take both the original residence and the new residence, Plaintiff reluctantly made payments of $6,600 in August 2011, as the June 2011 payment, and two payments of $6,501.15, in October 2011, as the August and September 2011

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

payments.

33.    In particular, in 2011, and because SPS refused to provide documentation evidencing its and/or their legal right to collect Plaintiff's monthly payments, Plaintiff telephoned BANA directly, to advise it that he was contesting the tax increases, as he was allowed to do under the Deed of Trust, and asked BANA to wait until the tax appeal was concluded before making any more property tax payments.  In response, Plaintiff was told by a woman who identified herself as Ms. Barbosa in BANA's Lancaster, California office, and stated that she was a Vice-President of BANA, that:

(A)    BANA would foreclose on the Property;

(B)    BANA would take Plaintiff's investment of $625,000 in his new home;

(C)    BANA will not accept Plaintiff's monthly payments;

(D)    Plaintiff had no options and should hire a lawyer and file a lawsuit; and

(E)    BANA would ruin Plaintiff's credit.

34.    Following these statements, Ms. Barbosa then added, in these or similar words: Mr. Singh, you are from India, you don't know the law, we are a very strong financial institution, we have a great team of lawyers, we have ball players in court, you cannot stand in front of us and you cannot win.  Based on such statements by Ms. Barbosa, and based on BANA's refusal to accept any payments from Plaintiff in and after November 2011, which payments Plaintiff repeatedly tendered to BANA, Plaintiff believed that he was being discriminated against by BANA and Countrywide, and each of them, based on his ethnic origin, and Plaintiff believed that he had no choice but to retain counsel and file a lawsuit, which he did in January 2012.

35.    Also during 2011, with Plaintiff's loan apparently having been transferred to BANA and Bank of America Home Loans, and with Countrywide no

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

19

longer doing business under that name, and with the servicing rights having apparently been transferred to SPS, Plaintiff made multiple requests to BANA through letters to its CEO, Brian Moynihan, asking for an explanation of the legal basis for the demands by BANA and SPS for increased monthly payments, and the legal basis for BANA and/or SPS to claim that it or they had a right to foreclose on his Property. In response, these Defendants refused to provide a Promissory Note or a Deed of Trust, and instead, they provided a copy of a document entitled "Assignment of Deed of Trust," purportedly recorded on November 3, 2011, in the Official Records, County of Orange, as Document No. 2011000558722, purportedly signed by "Christopher Herrera, Assistant Secretary of Mortgage Electronic Registration Systems" on October 19, 2011, and purportedly transferring "all beneficial interest under that certain Deed of Trust" to Mellon (the "Assignment"). A true and correct copy of the purported Assignment of Deed of Trust recorded on November 3, 2011, is attached hereto as Exhibit 6.

36. Plaintiff is informed and believes, and based thereon alleges, that the transfer of the servicing rights on residential real property loans, annually and sometimes more often than annually, such as was done here by BANA and Bank of America Home Loans, in 2011, 2012, and 2013, is part of a pattern and practice of racketeering activity by Bank of America, BANA and other lenders, as detailed in the multiple actions by the United States and the Attorneys General of 49 states and the District of Columbia, referred to hereinabove, against these entities for having engaged in fraudulent and predatory loan practices, to intentionally confuse borrowers, to avoid having to respond to requests for documents and information and to avoid having to provide a "single point of contact," as is now required in California under the Homeowner Bill of Rights ("HBOR") that became effective in 2013, and to avoid liability for their wrongful conduct.

37. Plaintiff is further informed and believes, and based thereon alleges, that such acts and omissions, including without limitation the "selling" of Plaintiff's

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

Modified Loan to Mellon and the transferring of the servicing rights to SPS, was and is also part of a pattern and practice of racketeering activity by Bank of America, BANA and other lenders, as detailed in the multiple actions by the United States and the Attorneys General of 49 states and the District of Columbia, referred to hereinabove, because they were intended to confuse the Plaintiff and prevent him from discovering the fraudulent acts and omissions that had been perpetrated against him.  In addition, by Mellon having "purchased" the Modified Loan in 2011, and by SPS having agreed to undertake the servicing of the Modified Loan, also in 2011, Mellon and SPS, and each of them, had affirmed, adopted and ratified the acts and omissions constituting a pattern and practice of racketeering activity and had thereby accepted full liability to Plaintiff for all prior fraudulent acts and omissions of Countrywide, BANA and Bank of America.

38.    However, because Plaintiff was never able to get an explanation of the reasons for the Assignment from BANA, SPS or Mellon, Plaintiff commenced an investigation into the authenticity of the Assignment of Deed of Trust, by contacting CoreLogic in South Carolina by telephone on several occasions.  In the morning of February 27, 2014, Plaintiff contacted CoreLogic, and spoke with a person who identified himself as Christopher Herrera, the purported signatory on the Assignment.  Herrera told Plaintiff that he (Herrera) did not start working for CoreLogic until March 2012, and that on October 19, 2011, when he allegedly "signed" the Assignment, he was not working at CoreLogic.  This admission by Herrera led Plaintiff to believe that the signature of "Christopher Herrera" on the Assignment was and is a fraud and a forgery, as was and is the Notary Jurat attached thereto, asserting that Christopher Herrera appeared before the notary in Ventura County, California and attested to his signature, which acts Plaintiff alleges herein are further and additional overt acts constituting part of the pattern and practice of racketeering activity.

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

39.     Then, on August 13, 2014, Plaintiff again contacted CoreLogic by telephone to inquire about the Assignment and spoke with a woman who identified herself as Rebecca Williams, a Vice-President of CoreLogic. Ms. Williams explained to Plaintiff that CoreLogic is a "document solutions company."   However, Ms. Williams could not validate or confirm the authenticity of the Assignment and instead directed Plaintiff to contact Bank of America.   On September 2, 2014, Plaintiff called CoreLogic again, this time speaking with a woman who identified herself as Julie Stern and stated that she was an employee of CoreLogic.  Ms. Stern advised Plaintiff that CoreLogic has a confidential agreement with Bank of America, and that it prepares whatever documents Bank of America requests.  Ms. Stern also said that she had no knowledge of an employee named Christopher Herrera.  When Plaintiff brought up the subject of the segment on "60 Minutes" detailing the preparation, execution and recordation of robo-signed false and fraudulent documents by document solution companies such as CoreLogic, where each employee was signing as many as 360 deeds of trust and assignments per hour with several different names, Ms. Stern asked Plaintiff's name, and when he said he was Surat Singh, Ms. Stern said I know your name, and she hung up on him.

40.     Before Plaintiff was able to determine from officers and employees at CoreLogic that the "signature" of "Christopher Herrera" on the document purporting to assign Plaintiff's Deed of Trust to Mellon, but after Ms. Barbosa, acting as an officer of BANA, threatened to foreclose on Plaintiff's Property if he failed to make the monthly payments that had been unilaterally increased to $6,600, Plaintiff filed a lawsuit against BANA, BofA, Countrywide and SCME in January 2012, in Orange County Superior Court, entitled *Singh v. Bank of America et al.*, Case No. 30-2012-00540715, for breach of contract, fraud and other wrongdoing (the "State Court Action").

41.     Once Plaintiff determined from his own investigation into the fraudulent acts and omissions by Bank of America and CoreLogic in producing false and void

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

robo-signed assignments, such as the "Assignment" recorded in November 2011, purporting to "assign" Plaintiff's Deed of Trust to Mellon, Plaintiff sought to take the depositions of Christopher Herrera and of the Notary who allegedly notarized Herrera's signature, Norma Rojas.  Neither Herrera or Rojas would appear for their depositions, but Plaintiff was able to obtain a copy of the entry in Rojas' notary book purporting to show that Herrera appeared before Rojas on October 19, 2011, a true and correct copy of which is attached hereto as Exhibit 7.  This entry from Rojas' notary book lists Herrera's address as 26825 Nautical Lane in Valencia, California. However, according to property records that Plaintiff was able to locate, that address is for a real property that Herrera sold in 2005, which is six years before he allegedly appeared before Rojas to purportedly sign the Assignment that he admitted to Plaintiff he did not sign, thereby providing further evidence that the Notary Jurat attached to the "Assignment" was and is willfully false and fraudulent and that the recordation of the "Assignment" with a knowingly false and fraudulent Notary Jurat, not only also renders the "Assignment" *void ab initio* but also constitutes yet another part of the pattern and practice of racketeering activity by the Defendants.

42.     After being told by Herrera himself, as well as by an officer and an employee of CoreLogic, that CoreLogic is a document preparation mill for Bank of America, tasked with the responsibility to fabricate documents for Bank of America and other entities, using mechanical robo-signing equipment, to produce documents purporting to "assign" deeds of trust to new entities, when the originals were lost or could not be located.  Plaintiff is informed and believes, and based thereon alleges, that Bank of America, Mellon and other lenders than record these fabricated documents purporting to "assign" the deeds of trust, and they then use these fabricated and void documents to conduct illegal foreclosures and steal borrowers' real property, all while intentionally misrepresenting to the borrowers, to foreclosure trustees and even to courts, when the "assignments" are challenged, that these are legal and legitimate "assignments," while at all times intentionally concealing that

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

these are false, fraudulent and void robo-signed documents.

43.     Attached hereto as Exhibit 8 are true and correct copies obtained by Plaintiff through his investigation, of the "Assignment" of Plaintiff's Deed of Trust and seven other "assignments" prepared from May 2011 through December 2011, everyone of which was prepared by CoreLogic in South Carolina, everyone of which was purportedly "signed" by Christopher Herrera, although there are no signatures, only initials, many of which are different, indicating that they were not actually initialed by the same person, and everyone of which was somehow miraculously notarized by the very same notary, "Norma Rojas" in Ventura, California, for real properties in California, North Carolina, Iowa and Mississippi. Plaintiff is informed and believes, and based thereon alleges, that the continuous and repeated use of these false, fabricated, forged and void "assignments" to foreclose on real properties throughout the United States, constitutes a pattern of racketeering activities by Bank of America, BANA, Countrywide, Mellon, SPS, Bayview and Quality.

44.     Based on Plaintiff's telephone conversations with Herrera and an officer and employee of CoreLogic, and based on additional investigations by Plaintiff and his counsel, Plaintiff concluded that:

(A)     The MERS entity identified as a Michigan corporation on the original Deed of Trust signed by Plaintiff in 2005, was suspended as a corporation by the California Secretary of State in 2002, and it therefore had no authority to act as nominee and beneficiary under the original Deed of Trust and also had no legal authority to assign any rights, beneficial or otherwise, under the original Deed of Trust;

(B)     Christopher Herrera was not employed by MERS, as Assistant Secretary or in any other capacity in October 2011, and therefore, his signature on that "Assignment," as well as multiple other "assignments," was and is a fraud and a forgery, rendering the "Assignment" void and of no legal force or effect;

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

(C)     The Notary Jurat attached to the Assignment was therefore also a fraud and a forgery, because Christopher Herrera could not have personally appeared before Notary Norma Rojas as an employee of CoreLogic or MERS in October 2011, and he could not have appeared before her in Ventura, California on that date, which fact also renders the "Assignment" void and of no legal force or effect;

(D)     The entity identified on the "Assignment" as CoreLogic, allegedly located in South Carolina, is a document preparation mill for BANA, Bank of America Home Loans and other lenders, that has a pattern and practice of preparing "replacement" documents for lenders, such as the "Assignment," using robo-signed forged and/or falsified signatures, when original loan documents have been lost or misplaced, as was alleged in numerous of the lawsuits filed by the United States and the Attorneys General of 49 states and the District of Columbia, as part of the fraudulent lending and foreclosure practices that constitutes a pattern of racketeering activity and caused Bank of America to pay more than $16.0 billion to settle claims regarding its and Countywide's fraudulent and predatory loan practices;

(E)     MERS was never a lawful "holder" of the Deed of Trust, as it was identified in the "Assignment," and therefore, even if it was entitled to do business in California, it was not an Assignor and could not lawfully "assign" the Deed of Trust to Mellon;

(F)     Plaintiff had never been notified, as he believed was required to be by the loan documents, that Mellon had purchased his Loan, and that Mellon was therefore the proper "Assignee" of the Deed of Trust; and

(G)     All of the foregoing multiple overt acts and omissions by CoreLogic, Herrera, Rojas, Mellon and MERS in October 2001 and thereafter, were acts or omissions constituting a pattern of racketeering activity.

25

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

45.     Based on these facts, Plaintiff is informed and believes, and based thereon alleges, that not only is the "Assignment" purporting to assign the Deed of Trust to Mellon secured by Plaintiff's Property, a fraud and forgery, rendering it invalid, *void ab initio*, illegal and unenforceable, but that the original Deed of Trust itself is a sham and a fraud, rendering it invalid, void, illegal and unenforceable, which means that as a matter of law, no lender from SCME through Countrywide, BANA, Bank of America Home Loans and then allegedly Mellon, had or has any security interest in Plaintiff's Property.  Therefore, the effort by any lender, trustee, substitute trustee, beneficiary or substitute beneficiary to commence foreclosure of Plaintiff's Property, as Mellon and QLS purportedly commenced on May 19, 2014, was and is invalid, void, illegal and unenforceable, as a matter of law, and to the extent a Notice of Default was recorded against Plaintiff's Property, it constitutes a slander on his title and is yet another part of the pattern of racketeering activity by these Defendants.  A true and correct copy of the Notice of Default recorded on May 19, 2014, in the Official Records of Orange Court, as Document No. 2014000193186, by which Mellon and Quality purported to commence the foreclosure of Plaintiff's Property, based on a forged, fraudulent and void Assignment of Deed of Trust recorded in November 2011, is attached hereto as Exhibit 9.

46.     However, notwithstanding detailed allegations in the State Court Action that the "Assignment" was *void ab initio* and that Mellon's and Quality's effort to foreclose on Plaintiff's Property was illegal, Plaintiff was mercilessly pummeled by BANA and Bank of America in the State Court Action over a period of more than four years, asserting that Plaintiff had waited too long to raise the fraud claims arising out of the Loan made in June 2005, by SCME as a "correspondent lender" for Countrywide, and that BANA and Bank of America had the legal right pay Plaintiff's property taxes even though he was appealing the increases that he believed were excessive, and in fact prevailed in both of his appeals of the increases in his property taxes.  Thus, Plaintiff is informed and believes, and based thereon alleges, that by

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL
FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

1  paying $64,637.73, as and for Plaintiff's property taxes, without notice to or the

2  consent of Plaintiff, BANA in fact paid more than was actually owed.

3       47.    Then, when Mellon, SPS and Quality were added to the State Court

4  Action in 2014, after Mellon and SPS caused a Notice of Default to be recorded

5  against the Property in May 2014, the pummeling continued against each of the four

6  amended complaints from 2014 to 2016, by which these defendants asserted that

7  Mellon had the legal right to commence a foreclosure of Plaintiff's Property.  As a

8  result of this procedural pummeling against Plaintiff's claims, the defendants

9  ultimately persuaded the trial court in December 2015, to sustain their demurrers and

10  dismiss the complaint.  In addition, these defendants also persuaded the trial court to

11  completely ignore the false, fraudulent, forged and void robo-signed "Assignment of

12  Deed of Trust" that legally barred Mellon from foreclosing on the Property, because

13  it had no legal security interest in the Property, on the grounds that under then-

14  existing state law, Plaintiff had no standing to contest the legal invalidity of the void

15  "Assignment."

16       48.    However, it was only after the judgment of dismissal was entered, when

17  the State Court Action was transferred to a different judge, that a court finally

18  recognized, for the first time, the invalidity of the forged and void "Assignment."  In

19  particular, on the Motion by Mellon and SPS for attorneys fees, based on the fee

20  provision in the Deed of Trust that Mellon claimed had been "assigned" to it in 2011,

21  Judge Theodore Howard issued a Tentative Ruling for the hearing on February 4,

22  2016, in which the Court recognized Plaintiff's argument, for the first time, that the

23  "Assignment" to Mellon was forged and therefore void and invalid, ruling that:

24           "there is no evidence that the Note was assigned to [Mellon], or

25           that New York Melon [sic] has a present interest in the Deed of Trust,

26           or had an interest in the Deed of Trust during all the time this Lawsuit

27           was pending, so as to require it to defend the Security.... In addition, the

28           authenticity of the Assignment is properly questioned and Defendants

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

27

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL
FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

1   have not addressed that issue."

2      49.   The trial court then took the motion under submission and denied the

3   motion in its entirety by Minute Order entered on February 10, 2016.   Judge

4   Howard's Tentative Ruling Denying Mellon's Motion for Attorneys Fees, and the

5   Minute Order entered on February 10, 2016, true and correct copies of which are

6   attached hereto as Exhibits 10 and 11, respectively.

7      50.   On February 18, 2016, eight days after Judge Howard's denial of

8   Mellon's Motion for Attorneys Fees, the California Supreme Court held in *Yvanova*

9   *v. New Century Mortgage Corp.* (2016) 62 Cal. 4th 919, 924, that "a borrower who

10  has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful

11  foreclosure based on an allegedly void assignment merely because he or she was in

12  default on the loan and was not a party to the challenged assignment, but then stated

13  that "[w]e do not hold or suggest that a borrower may attempt to preempt a threatened

14  nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed."

15     51.   While *Yvanova* specifically granted standing to a borrower who

16  challenges a void assignment, *after* the foreclosure has occurred, the issue of whether

17  a borrower has standing to challenge the validity of a deed of trust *before* the property

18  is lost in foreclosure, was decided in favor of granting standing to the borrower, by

19  a U.S. District Court in the Northern District of California, in *Lundy v. Selene*

20  *Finance, LP*, 2016 U.S. Dist. LEXIS 35547 (N.D. Cal. 2016).   There, the District

21  Court concluded that if the California Supreme Court is faced with a pre-foreclosure

22  challenge to the validity of an assignment of a note or deed of trust, the California

23  Supreme Court is likely to hold that a borrower *does have standing* before the

24  foreclosure occurs, provided that he has alleged specific facts supporting his

25  allegation that the assignment of the note or deed of trust is void or otherwise invalid.

26  The District Court in *Lundy* analyzed *Yvanova* at length, along with a plethora of

27  cases on both sides of the pre-foreclosure standing issue, and it noted that the

28  prejudice to a borrower as a result of the *imminent* loss of his property in foreclosure,

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

28

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL
FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

is nearly the same as the prejudice to a borrower who has lost his property in foreclosure.

52.     Unfortunately for Plaintiff, however, on his appeal of the judgment of dismissal in the State Court Action to the Fourth District Court of Appeal, the Court ignored *Yvanova* and *Lundy* and instead affirmed the judgment of dismissal, ruling that Plaintiff's sole remaining cause of action in the Sixth Amended Complaint, for conspiracy to defraud, which alleged in great detail a series of fraudulent acts and omissions from June 2005 through May 2014, was barred by the three-year statute of limitations for fraud, and was not saved by the "last overt act" doctrine, which provides that the statute of limitations for a conspiracy to defraud does not commence to run until the last overt act has occurred.  Also, unfortunately for Plaintiff, the Court of Appeal ignored Judge Howard's ruling that Mellon did not have a security interest in the Property and never reached the issue of the forged and void "Assignment." The Opinion of the Court of Appeal is attached hereto as Exhibit 12.

# FIRST CAUSE OF ACTION

## (*For Violation of the Racketeer Influenced and Corrupt  Organizations Act, 18 U.S.C. § 1962(c), Against All Defendants Except QLS*)

53.     Because the courts in the State Court Action never decided or even reached the issue of Plaintiff's standing to challenge the void "Assignment" and the illegal efforts by the Defendants, and each of them, to initiate or assist in the foreclosure of Plaintiff's Property, based on a knowingly-void "Assignment," and because of the recent changes in case law in California and in the Federal Courts in California, which occurred after Plaintiff's State Court Action was dismissed on procedural grounds in December 2015, and because Mellon unilaterally transferred the servicing of Plaintiff's Loan from SPS to Bayview, in January 2017, in an obvious effort to once again confuse the Plaintiff and to seek to exempt SPS from liability for its acts and omissions prior to the transfer, Plaintiff now brings this action, asserting

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

that Defendants Bank of America, BANA, CoreLogic, SPS, Bayview and Mellon, and each of them, committed acts and omissions that not only constitute a continuous pattern of racketeering activity but also constitute other wrongdoing in violation of Plaintiff's rights.

54.   Specifically, Defendants Bank of America, BANA, CoreLogic, SPS, Bayview and Mellon, and each of them, have engaged in and conducted substantial business in California and particularly in Orange County, California, including without limitation residential mortgage lending, the servicing of residential loans, offering and providing residential mortgage loan modifications, preparing and/or recording documents purporting to provide security interest in borrowers' property, many of which are knowingly false and void, preparing and/or recording notices of default to initiate non-judicial foreclosure proceedings against borrowers claimed to be in default, preparing and/or recording notices of trustees' sales to complete the non-judicial foreclosure of residential properties and completing such foreclosures through trustees' sales, as well as marketing, advertising and/or promoting such services in California.

55.   Each of Defendants Bank of America, BANA, CoreLogic, SPS, Bayview and Mellon, separately and together, constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4), through which these Defendants, and each of them, conducted a pattern of racketeering activity as alleged herein.  Throughout all of the time that the events detailed herein occurred, from 2009 through the present, these Defendants engaged in interstate commerce, through the U.S. Mail and through wire communications, and their acts and omissions affected interstate commerce, because these acts and omissions involved commercial activities across state lines, including national and regional marketing and advertising campaigns, the preparation of documents outside of California that were then sent to and recorded in California, the preparation of correspondence from outside of California that was sent to residents of California through the U. S. Mail, and the receipt of funds that were requested by

1    and sent to one or more of these entities located in states other than California.

2        56.    To the extent that Defendants CoreLogic, SPS and Bayview, received

3    instructions from and acted at the direction of one or more of the other Defendants,

4    these Defendants, separately and together, were knowing and willing participants in

5    the scheme constituting a pattern of racketeering activity, and they and each of them

6    derived, received and reaped revenues and profits therefrom.

7        57.    These Defendants, and each of them, knowingly, willfully and

8    unlawfully operated, conducted and/or participated in, directly or indirectly, the

9    affairs of the enterprise through a pattern of racketeering activity within the meaning

10   of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c).  The racketeering activity was made

11   possible by the regular and repeated use of the facilities, services, operations,

12   distribution channels and employees of these Defendants, and each of them.  Each of

13   these Defendants committed multiple "Racketeering Acts," as described herein,

14   including aiding and abetting the "Racketeering Acts" of the other Defendants, and

15   each of them.

16       58.    These "Racketeering Acts" were not isolated, but rather were related, in

17   that they had the same or similar purposes and results, participants, victims and

18   methods of commission.   Further, such "Racketeering Acts" were continuous,

19   occurring on a regular basis from the time of the mortgage melt-down in 2008,

20   through the present.

21       59.    In devising and executing this scheme of racketeering activities, these

22   Defendants, and each of them, acting through their officers and employees,

23   committed acts constituting indictable offenses under 18 U.S.C. §§ 1341, 1343 and

24   1344, in that they devised and knowingly carried out a material scheme or artifice to

25   defraud the borrowers and/or to obtain money or real property through means of

26   materially false or fraudulent pretenses, representations, promises or omissions of

27   material fact, including without limitation the use of hundreds of thousands of

28   knowingly forged, false, fraudulent and therefore *void ab initio* assignments of deeds

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

31

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL
FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

of trust that purported to convey security interests in real property and were then fraudulently recorded and knowingly used to initiate and, in many cases, complete the foreclosure of real properties through false claims of a legal security interest in the foreclosed property.  In advancing their scheme to steal real properties through illegal foreclosures, these Defendants, and each of them, committed these Racketeering Acts, which number in the hundreds of thousands, intentionally and knowingly, with the specific intent to advance this scheme to steal real properties through illegal foreclosures, based on forged and void assignments of deeds of trust.

60.     Defendants, and each of them, utilized hundreds of thousands of mail and interstate wire communications to create and perpetuate this scheme to steal borrowers' real properties through false, fabricated and void documents utilized to conduct illegal foreclosures, through intentional misrepresentations to, and material omissions from, borrowers, offices of the country recorders, foreclosure trustees and even the courts, whenever the scheme was questioned by borrowers.

61.     The fraudulent acts and material omissions by these Defendants, and each of them, in the perpetuation of this scheme as to Plaintiff, included the following contacts and communications sent by one or more of these Defendants to Plaintiff using the U.S. Mail, commercial carriers, interstate wires and/or other electronic media:

(A)     In or about February 2009, Countrywide, while intentionally concealing the fact that it had merged into Bank of America in 2008, approached Plaintiff and offered a loan modification, on terms unilaterally dictated by Countrywide with no negotiation, that added more than $121,000 to the principal of Plaintiff's Loan, with a new fixed monthly payment of $4,363.30, beginning on May 1, 2009 (the "Modified Loan"), as a result of accrued interest from the highly-profitable Pay Option ARM Loan that was purchased by Countrywide from its "correspondent lender," within 30 days after it had been made;

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

(B)   In 2011 and again in March 2012, *after* it had allegedly sold Plaintiff's Modified Loan and assigned his Deed of Trust, and therefore had no ownership of Plaintiff's Modified Loan or interest in Plaintiff's Property, BANA or Bank of America Homes Loans unilaterally, without the knowledge or consent of the Plaintiff, paid the allegedly past due property taxes on Plaintiff's Property, in an amount believed to be $64,637.73, in direct violation of the terms of the Deed of Trust, while Plaintiff was successfully appealing the excessive increase in his property taxes;

(C)   In or about April 2011, apparently as a result of the illegal payment of Plaintiff's property taxes, BANA or Bank of America Homes Loans unilaterally increased Plaintiff's fixed payment by 50 %, from $4,363.30 to $6,600, without any explanation for the increase;

(D)   From August through October 2011, Plaintiff made several payments at the increased amount, but when he refused to continue making the increased payments, because BANA refused to explain the reasons for the unilateral increase, BANA, by and through its officer, Ms. Barbosa, in or about November 2011, refused to accept Plaintiff's tender of payments of $4,363.30 and instead, threatened to foreclose on Plaintiff's Property and take the second residence Plaintiff built at a cost of $625,000 and threatened to ruin his credit, while also threatening that if Plaintiff sought to challenge BANA in court, he could not win, because BANA had a great team of lawyers;

(E)   In November 2011, after Plaintiff made multiple requests for an explanation of the legal basis for the increased monthly payments and the legal basis for BANA and/or SPS to claim that it or they had a right to foreclose on his Property, BANA refused to provide a Promissory Note or a Deed of Trust, and instead, provided the void "Assignment of Deed of Trust," that had been robo-signed with the false and fraudulent "signature" of "Christopher Herrera and purportedly recorded on November 3, 2011, that purported to transfer "all

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

33

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

beneficial interest under that certain Deed of Trust" to Mellon;

(F)     On May 19, 2014, Mellon and QLS, initiated the foreclosure of Plaintiff's Property by recording a Notice of Default, that was and is based on the false, fraudulent and knowingly-void robo-signed Assignment;

(G)     On February 27, 2014, Plaintiff contacted CoreLogic, and spoke with a person who identified himself as Christopher Herrera, on August 13, 2014, Plaintiff again contacted CoreLogic and spoke with a woman who identified herself as Rebecca Williams, a Vice-President of CoreLogic, and on September 2, 2014, Plaintiff called CoreLogic for a third time, this time speaking with a woman who identified who identified herself as Julie Stern and stated that she was an employee of CoreLogic; in these telephone conversations, Plaintiff was informed, most importantly, that Christopher Herrera did not work for CoreLogic or MERS at the time he allegedly signed the "Assignment" in October 2011, and that he did not sign the "Assignment" purportedly assigning Plaintiff's Deed of Trust to Mellon;

(H)     In addition, Plaintiff was informed in these telephone conversations with officers, employees and representatives of CoreLogic in February, August and September 2014, that CoreLogic is a document mill in South Carolina, for Bank of America, that prepares and processes whatever documents Bank of America requests, using robo-signing machines to prepare hundreds of thousands of assignments and related documents to replace documents that have been lost or cannot be located, which robo-signed documents allow Bank of America and its assignees to foreclose on properties such as the Plaintiff's, using false and knowingly-void assignments purportedly conveying the beneficial security interests in the deeds of trust;

(I)     In or about July 2016, after Plaintiff had perfected an appeal of the State Court Action, Mellon, SPS and QLS recorded a Notice of Trustee's Sale, setting the sale of Plaintiff's Property in August 2016, again purportedly based

34

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

1  on the knowingly-void robo-signed Assignment of Deed of Trust, and in direct

2  violation of established law providing that there is an automatic stay on any

3  efforts by a lender to foreclose on property after an appeal has been perfected,

4  and that such efforts are therefore prohibited; see, e.g., *Royal Thrift & Loan*

5  *Co. v. County Escrow, Inc.* (2004) 123 Cal. App. 4th 24;

6        (J)    On or about January 30, 2017, in what is believed by Plaintiff to

7  be yet another effort to avoid liability and confuse the Plaintiff, Plaintiff was

8  informed that Mellon transferred the servicing of Plaintiff's Modified Loan to

9  Bayview, and based on that transfer, Bayview, in concert with Mellon and

10  QLS, and despite the prohibition on foreclosure during the pendency of a

11  perfected appeal, continued the Trustee's Sale several times; and

12        (K)    With the Judgment of Dismissal having been affirmed in May

13  2017, Mellon, Bayview and QLS have now illegally set the Trustee's Sale of

14  Plaintiff's Property for July 21, 2017, with full knowledge that the entire

15  foreclosure process against Plaintiff's Property commenced in May 2014, is

16  based on a false, fraudulent and knowingly-void robo-signed Assignment of

17  Deed of Trust recorded by BANA in November 2011.

18        62.    The foregoing pattern of illegal activities committed by these

19  Defendants, and each of them, constituting the "Predicate Acts," were done with the

20  purpose of financial gain and were done within the past ten (10) years.  By these acts

21  and omissions alleged herein, Defendants, and each of them, jointly and severally

22  engaged in and/or aided, abetted and conspired to violate statutes and other well-

23  established legal requirements, as expressly set forth most recently by the California

24  Supreme Court in *Yvanova*, that a borrower "is obligated to pay the debt, or suffer

25  loss of the security, only to a person or entity that has actually been assigned the

26  debt," and that "[t]he borrower owes money not to the world at large but to a

27  particular person or institution, and only the person or institution entitled to payment

28  may enforce the debt by foreclosing on the security."  The law presumes generally

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

35

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL
FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

that a person or entity intends the obvious results of his, her or its actions.

63. In addition, as has been alleged in numerous actions brought by the Department of Justice and Attorneys General of 49 states, against one or more of these Defendants, these Defendants have acted in criminal violation of 18 U.S.C. §§ 1341 and 1343, which provides criminal penalties for anyone who uses the U.S. Mail and/or "transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce any writings, signs, signals, pictures or sounds" in operation or furtherance of or "for the purpose of executing such scheme or artifice" "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises."

64. Plaintiff is informed and believes, and based thereon alleges, that these Defendants, and each of them, devised and intended to devise a scheme or artifice meant to defraud and/or to obtain money or real property by the use of knowingly false, fraudulent and void robo-signed documents, utilized false or fraudulent pretenses, representations, and/or promises, such as by falsely representing that Mellon had a valid and lawful security interest in Plaintiff's Property, when these Defendants, and each of them knew or should have known, based on their own conduct in using a document preparation mill in South Carolina and based on the decision of Judge Howard in February 2016, that Mellon does not and did not have a valid or lawful security interest in Plaintiff's Property.

65. Defendants utilized the U.S. Mails and transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, writings, signs, signals, pictures or sounds in operation or furtherance of or for the purpose of executing such scheme or artifice, the scheme or artifice devised by these Defendants, and each of them, to defraud the Plaintiff and others and to obtain money or property by means of false or fraudulent pretenses, representations, or promises.

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

66.     Each and every one of these Defendants did associate with a RICO enterprise of individuals and entities, as defined in 18 U.S.C. § 1961(4), who were associated in fact and who engaged in, and whose activities did affect, interstate commerce. Likewise, each and every Defendant did conduct and/or participate, either directly or indirectly, in the conduct of affairs of such RICO enterprise through a pattern of racketeering activity, all in violation of 18 U.S.C. §§ 1961(4), (5), (9) and 1962(c).

67.     During the ten (10) calendar years preceding July 11, 2017, all Defendants, and each of them did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts alleged herein and are itemized in the RICO laws at 18 U.S.C. §§1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. § 1962(c) (prohibited activities).

68.     Plaintiff further alleges that all Defendants, and each of them, did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten borrowers and others with the continuing threat of their respective and racketeering activities, also in violation of 18 U.S.C. § 1962(c).

69.     As a direct and proximate result of such fraudulent acts and omissions constituting Racketeering Activities, by Mellon, CoreLogic, BANA, Bank of America Home Loans, including the liabilities of Countrywide as a result of their merger with Countrywide in 2008, and including the liabilities of Bank of America, as servicer of Plaintiff's Modified Loan, which liabilities have been assumed by SPS and Bayview, as a result of the transfers of the servicing rights on Plaintiff's Modified Loan, Plaintiff has suffered and will suffer, if his Property is lost in foreclosure, an amount believed to be in excess of $1.5 million, and based thereon, Plaintiff demands that judgment be entered against these Defendants, and each of them, jointly and severally, including an award of treble damages as consistent with 18 U.S.C. § 1964(c), compensatory and actual damages, reasonable attorneys fees, pre-judgment

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

interest, post-judgment interest, costs and any other award or relief this Court deems just and proper.

70.    As a further direct and proximate result of such fraudulent acts and omissions constituting Racketeering Activities, by Mellon, CoreLogic, BANA, Bank of America Home Loans, including the liabilities of Countrywide as a result of their merger with Countrywide in 2008, and including the liabilities of Bank of America, as servicer of Plaintiff's Modified Loan, which liabilities have been assumed by SPS and Bayview, as a result of the transfers of the servicing rights on Plaintiff's Modified Loan, Plaintiff is likely to suffer and incur irreparable damages that cannot be compensated with a money judgment, as a result of the illegal commencement of foreclosure proceedings by Defendants BANA, QLS, SPS, Bayview and Mellon against Plaintiff's Property.    Based thereon, Plaintiff is entitled to temporary, preliminary and permanent injunctive relief against all Defendants and/or other provisional remedies, to enjoin and prevent such an improper, illegal and/or bad faith foreclosure and Trustee's Sale by these Defendants, and each of them, in the future, so that the foreclosure and Trustee's Sale can be postponed until the conclusion of this action.

## SECOND CAUSE OF ACTION

**(*For Conspiracy to Engage in a Pattern of Racketeering Activity, in Violation of 18 U.S.C. § 1962(d), Against All Defendants Except QLS*)**

71.    Plaintiff hereby realleges and incorporates herein by this reference as though set forth in full, the allegations of paragraphs 1 through 70, inclusive, herein, and specifically repeats and re-alleges the allegations of the First Cause of Action concerning RICO liability.

72.    The Defendants, and each of them did conspire to operate, participate in and maintain an interest in a RICO enterprise engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

73.     During the ten (10) calendar years preceding July 11, 2017, all Defendants, and each of them did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts alleged herein and are itemized in the RICO laws at 18 U.S.C. §§1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. § 1962(d).

74.     Plaintiff further alleges that all Defendants, and each of them, did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten borrowers and others with the continuing threat of their respective and racketeering activities, also in violation of 18 U.S.C. § 1962(d).

75.     As a direct and proximate result of the conspiracy to commit such fraudulent acts and omissions constituting Racketeering Activities, by Mellon, CoreLogic, BANA, Bank of America Home Loans, including the liabilities of Countrywide as a result of their merger with Countrywide in 2008, and including the liabilities of Bank of America, as servicer of Plaintiff's Modified Loan, which liabilities have been assumed by SPS and Bayview, as a result of the transfers of the servicing rights on Plaintiff's Modified Loan, Plaintiff has suffered and will suffer, if his Property is lost in foreclosure, an amount believed to be in excess of $1.5 million, and based thereon, Plaintiff demands that judgment be entered against these Defendants, and each of them, jointly and severally, including an award of treble damages as consistent with 18 U.S.C. § 1964(c), compensatory and actual damages, reasonable attorneys fees, pre-judgment interest, post-judgment interest, costs and any other award or relief this Court deems just and proper.

76.     As a further direct and proximate result of the conspiracy to commit such fraudulent acts and omissions constituting Racketeering Activities, by Mellon, CoreLogic, BANA, Bank of America Home Loans, including the liabilities of Countrywide as a result of their merger with Countrywide in 2008, and including the liabilities of Bank of America, as servicer of Plaintiff's Modified Loan, which

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

liabilities have been assumed by SPS and Bayview, as a result of the transfers of the servicing rights on Plaintiff's Modified Loan, Plaintiff is likely to suffer and incur irreparable damages that cannot be compensated with a money judgment, as a result of the illegal commencement of foreclosure proceedings by Defendants BANA, QLS, SPS, Bayview and Mellon against Plaintiff's Property.  Based thereon, Plaintiff is entitled to temporary, preliminary and permanent injunctive relief against all Defendants and/or other provisional remedies, to enjoin and prevent such an improper, illegal and/or bad faith foreclosure and Trustee's Sale by these Defendants, and each of them, in the future, so that the foreclosure and Trustee's Sale can be postponed until the conclusion of this action.

### THIRD CAUSE OF ACTION

### *(For Slander of Title Against All Defendants)*

77.     Plaintiff hereby realleges and incorporates herein by this reference as though set forth in full, the allegations of paragraphs 1 through 70, inclusive, herein, and specifically repeats and re-alleges the allegations of the First Cause of Action concerning RICO liability and the allegations of the Second Cause of Action for operating a conspiracy in violation of RICO.

78.     Plaintiff is informed and believes, and based thereon alleges, that the Deed of Trust recorded in the Official Records for the County of Orange, on June 29, 2005, as Instrument No. 2005-000504856, was and is void and invalid, in that MERS, which purported to act as a nominee for the lender and as the beneficiary, was suspended as a corporation in California in 2002, and it therefore had no authority to act as nominee and beneficiary under the original Deed of Trust.  As a result, the recording of a void Deed of Trust was without any privilege to do so and rendered Plaintiff's Property unmarketable, and it therefore was a disparagement and slander of Plaintiff's title.

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

79.     In or about November 2011, when Plaintiff sought to determine the legal basis for BANA's demands for increased payments, and the legal basis for BANA and SPS claiming that they had a right to foreclose on his Property, BANA and SPS refused to provide a Promissory Note or a Deed of Trust, and instead they provided a copy of the false, fraudulent and knowingly-void robo-signed Assignment recorded on November 3, 2011.  With Plaintiff having learned in 2014 that Christopher Herrera's "signature" on that Assignment is a fraud and a forgery, that the Notary Jurat attached to the Assignment was therefore also a fraud and a forgery, the recording of a forged, fraudulent and void Assignment was without any privilege to do so and rendered Plaintiff's Property unmarketable, and it therefore was a disparagement and slander of Plaintiff's title.

80.     As a direct and proximate result of these separate disparagements and slanders of his title, Plaintiff has suffered and incurred a pecuniary loss that is recoverable as damages in this action believed to be in excess of $1.5 million and expects to suffer and incur in the future, further and additional damages, in an amount that is not possible to ascertain.

81.     As a further direct and proximate result of these separate disparagements and slanders of his title by Mellon, CoreLogic, BANA, Bank of America Home Loans, Countrywide, SPS, Bayview and QLS, Plaintiff is likely to suffer and incur irreparable damages that cannot be compensated with a money judgment, as a result of the illegal commencement of foreclosure proceedings by Defendants BANA, QLS, SPS, CoreLogic, Bayview and Mellon against Plaintiff's Property.  Based thereon, Plaintiff is entitled to temporary, preliminary and permanent injunctive relief against all Defendants and/or other provisional remedies, to enjoin and prevent such an improper, illegal and/or bad faith foreclosure and Trustee's Sale by these Defendants, and each of them, in the future, so that the foreclosure and Trustee's Sale can be postponed until the conclusion of this action.

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

41

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

**FOURTH CAUSE OF ACTION**

*(For Wrongful Foreclosure Against All Defendants)*

82.    Plaintiff hereby realleges and incorporates herein by this reference as though set forth in full, the allegations of paragraphs 1 through 70, inclusive, herein, and specifically repeats and re-alleges the allegations of the First Cause of Action concerning RICO liability, the allegations of the Second Cause of Action for operating a conspiracy in violation of RICO, and the allegations of the Third Cause of Action for slander of title.

83.    As alleged herein, a Deed of Trust against Plaintiff's Property was recorded in 2005, but was and is of no legal force or effect, because the alleged nominee, MERS, was suspended and therefore had no legal authority to act. Subsequently, the Assignment of Deed of Trust recorded on November 3, 2011, that purported to assign the security interest in Plaintiff's Property to Mellon, was *void ab initio* and therefore of no legal force or effect, because the Assignment was false, fraudulent and robo-signed with a forged "signature" of "Christopher Herrera," who personally admitted to Plaintiff that he (Herrera) did not sign that document and did not appear before a notary in Ventura, California, to attest to his "signature."

84.    Plaintiff is informed and believes, and based thereon alleges, that because the Deed of Trust and the Assignment of Deed of Trust were and are false, fraudulent, void, legally invalid and of no force or effect, the recordation on May 19, 2014, of a Notice of Default, by QLS, at the direction of Mellon and SPS, and the subsequent recordation in July 2016, of a Notice of Trustee's Sale, by QLS, at the direction of Mellon and SPS, and the subsequent postponement of such sales and re-recording of new Notices of Trustee's Sale, by QLS, at the direction of Mellon, SPS and Bayview, also were and are false, fraudulent, void, legally invalid and of no force or effect, and specifically did not and do not constitute the lawful commencement of a non-judicial foreclosure proceeding or the lawful effort to foreclose on Plaintiff's Property through a Trustee's Sale.

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

42

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

85.    In May 2015, after Plaintiff had received multiple copies of the Notice of Default recorded by QLS on May 19, 2014, he telephoned QLS and advised them that the "Assignment" was a forgery and therefore void.  The representative of QLS that he talked to, advised Plaintiff that QLS wanted no part of a foreclosure based on invalid or fraudulent documents, and asked Plaintiff to send the proof and QLS will not foreclose.  Plaintiff did so, but QLS refused to rescind or vacate the Notice of Default.  Then, in March 2017, after Judge Howard denied Mellon's Motion for Attorneys Fees, on the grounds that "the authenticity of the Assignment [was] properly questioned" by Plaintiff, Plaintiff sent a copy of Judge Howard's ruling to QLS, along with a copy of the forged and void "Assignment," but QLS ignored these documents and persisted with the foreclosure based on the void Notice of Default and the equally void Notice of Trustee's Sale that QLS recorded in July 2016, at the direction of Mellon and SPS.

86.    As was expressly set forth in February 2016, by the California Supreme Court in *Yvanova*, a borrower "is obligated to pay the debt, or suffer loss of the security, only to a person or entity that has actually been assigned the debt," and that "[t]he borrower owes money not to the world at large but to a particular person or institution, and only the person or institution entitled to payment may enforce the debt by foreclosing on the security."

87.    Plaintiff is therefore informed and believes, and based thereon alleges, that the acts and omissions of Defendants BANA, Bank of America, Countrywide, Mellon, CoreLogic, SPS, Bayview and QLS, in purporting to assign the Deed of Trust, in purporting to record a Notice of Default and in purporting to record a Notice of Trustee's Sale, together and separately constitute a wrongful foreclosure, or attempted wrongful foreclosure, of Plaintiff's Property.

88.    As a direct and proximate result of the wrongful foreclosure, or attempted wrongful foreclosure, of Plaintiff's Property, by these Defendants, Plaintiff has suffered and incurred a pecuniary loss that is recoverable as damages in this

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

action, believed to be in excess of $1.5 million, including without limitation more than $100,000 in legal fees paid or incurred in the State Court Action and on appeal, in his unsuccessful effort to demonstrate that the Assignment is *void ab initio* and therefore a legal invalid basis to commence a foreclosure of Plaintiff's Property, and Plaintiff expects to suffer and incur in the future, further and additional damages, in an amount that is not possible to ascertain.

89.     Plaintiff is excused from tendering the amount allegedly in default, first because no foreclosure has yet occurred and second because the courts in California have eliminated the tender requirement that is repeatedly and fraudulently raised by lenders.  See, e.g., *Mabry v. Superior Court* (2010) 185 Cal. App. 4th 208, and *Fonteno v. Wells Fargo Bank, N.A.* (2014) 228 Cal App. 4th 1358, 1373-74.

90.     As a further direct and proximate result of the wrongful foreclosure, or attempted wrongful foreclosure, by Mellon, CoreLogic, BANA, Bank of America Home Loans, Countrywide, SPS, Bayview and QLS, Plaintiff is likely to suffer and incur irreparable damages that cannot be compensated with a money judgment, as a result of the illegal commencement of foreclosure proceedings by Defendants BANA, QLS, SPS, CoreLogic, Bayview and Mellon against Plaintiff's Property.  Based thereon, Plaintiff is entitled to temporary, preliminary and permanent injunctive relief against all Defendants and/or other provisional remedies, to enjoin and prevent such an improper, illegal and/or bad faith foreclosure and Trustee's Sale by these Defendants, and each of them, in the future, so that the foreclosure and Trustee's Sale can be postponed until the conclusion of this action.

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

**FIFTH CAUSE OF ACTION**

*(For Fraudulent Misrepresentation Against All Defendants)*

91.    Plaintiff hereby realleges and incorporates herein by this reference as though set forth in full, the allegations of paragraphs 1 through 70, inclusive, herein, and specifically repeats and re-alleges the allegations of the First Cause of Action concerning RICO liability, the allegations of the Second Cause of Action for operating a conspiracy in violation of RICO, the allegations of the Third Cause of Action for slander of title, and the allegations of the Fourth Cause of Action for wrongful foreclosure.

92.    In or about November 2011, when Plaintiff sought to determine the legal basis for BANA's demands for increased payments, and the legal basis for BANA and SPS claiming that they had a right to foreclose on his Property, BANA and SPS refused to provide a Promissory Note or a Deed of Trust.  Instead, BANA and SPS provided to Plaintiff a copy of the false, fraudulent and knowingly-void robo-signed Assignment recorded on November 3, 2011, that BANA and SPS affirmatively represented was a valid and lawful Assignment that had assigned the beneficial interest in the Deed of Trust recorded in 2005, to Mellon.

93.    The representation by BANA, CoreLogic and SPS that the Assignment was a valid and lawful Assignment, was false and *void ab initio* and known to BANA, CoreLogic and SPS to be false and *void ab initio*, because they and each of them knew that the "Assignment" had been generated by CoreLogic, a document mill in South Carolina utilized by BANA to provide "replacement" documents at BANA's direction, using a mechanical robo-signing machine that affixed the "signature" of "Christopher Herrera" on that document. However, that document was neither signed by Christopher Herrera nor was the "signature" lawfully attested to by Notary Norma Rojas in Ventura, California, and the recordation of that "Assignment" was false, fraudulent, legally invalid and of no legal force or effect.

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

94.    Plaintiff, however, did not know that the "Assignment of Deed of Trust" to Mellon, was false, fraudulent, *void ab initio* and of no legal force or effect, and he reasonably and justifiably relied on the truthfulness of the representations by BANA, CoreLogic and SPS, until February, August and September of 2014, when he placed telephone calls to CoreLogic and was informed by Christopher Herrera and others that the "Assignment" was false, fraudulent, *void ab initio* and of no further force or effect.

95.    In addition, when Mellon, SPS and QLS commenced the foreclosure of Plaintiff's Property, by the recordation of a Notice of Default on May 19, 2014, that recordation constituted an affirmative representation by Mellon, SPS and QLS, that they, and each of them, had a legal right to commence the foreclosure of Plaintiff's Property.  That representation that the Notice of Default constituted a valid and lawful commencement of the foreclosure process, was false and *void ab initio* and known to Mellon, SPS and QLS to be false and *void ab initio*, because they and each of them knew that the "Assignment" on which that Notice of Default and the foreclosure process was based, was itself false, fraudulent, *void ab initio*, because it had been generated by CoreLogic, at BANA's direction, using a mechanical robo-signing machine that affixed the forged "signature" of "Christopher Herrera" on that document.

96.    Again, Plaintiff did not know that the Notice of Default was false, fraudulent, *void ab initio* and of no legal force or effect, and he reasonably and justifiably relied on the truthfulness of the representations by Mellon, SPS and QLS that they had a legal right to commence the foreclosure, until February, August and September of 2014, when he placed telephone calls to CoreLogic and was informed by Christopher Herrera and others that the "Assignment" was false, fraudulent, *void ab initio* and of no further force or effect, and that as a result, the Notice of Default was similarly false, fraudulent, *void ab initio* and of no further force or effect.

46

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

97.     Further, when Mellon, SPS and QLS sought to complete the foreclosure of Plaintiff's Property, by the recordation of a Notice of Trustee's Sale in July 2016, notwithstanding the prohibition on proceeding with a foreclosure after an appeal has been perfected, that recordation also constituted an affirmative representation by Mellon, SPS and QLS, that they, and each of them, had a legal right to schedule a Trustee's Sale and to sell Plaintiff's Property, as part of the non-judicial foreclosure process.  Thereafter, when the Trustee's Sale was continued by the recordation of new Notices of Trustee's Sale, by Mellon, SPS, Bayview and QLS, that representation that the new Notices of Trustee's Sales constituted a valid and lawful effort to sell Plaintiff's Property, was also false and *void ab initio* and known to Mellon, SPS, Bayview and QLS to be false and *void ab initio*, because they and each of them knew that the "Assignment" on which that Notice of Default and Notice of Trustee's Sale and the entire foreclosure process itself was based, was itself false, fraudulent, *void ab initio*, because it had been generated by CoreLogic, at BANA's direction, using a mechanical robo-signing machine that affixed the forged "signature" of "Christopher Herrera" on that document.

98.     Again, Plaintiff did not know that these multiple Notices of Trustee's Sale were false, fraudulent, *void ab initio* and of no legal force or effect, and he reasonably and justifiably relied on the truthfulness of the representations by Mellon, SPS, Bayview and QLS that they had a legal right to complete the foreclosure of Plaintiff's Property, until February, August and September of 2014, when he placed telephone calls to CoreLogic and was informed by Christopher Herrera and others that the "Assignment" was false, fraudulent, *void ab initio* and of no further force or effect, and that as a result, the Notices of Trustee's Sale were similarly false, fraudulent, *void ab initio* and of no further force or effect.

99.     As a direct and proximate result of such intentional misrepresentations and fraudulent acts by BANA, Mellon, CoreLogic, SPS, Bayview and QLS, Plaintiff has suffered and incurred a pecuniary loss that is recoverable as damages in this

1    action believed to be in excess of $1.5 million and expects to suffer and incur in the

2    future, further and additional damages, in an amount that is not possible to ascertain.

3        100.   As a further direct and proximate result of such intentional

4    misrepresentations and fraudulent acts by BANA, Mellon, CoreLogic, SPS, Bayview

5    and QLS, Plaintiff is likely to suffer and incur irreparable damages that cannot be

6    compensated with a money judgment, as a result of the illegal commencement of

7    foreclosure proceedings by Defendants BANA, Mellon, QLS, SPS, CoreLogic and

8    Bayview against Plaintiff's Property.  Based thereon, Plaintiff is entitled to

9    temporary, preliminary and permanent injunctive relief against all Defendants and/or

10   other provisional remedies, to enjoin and prevent such an improper, illegal and/or bad

11   faith foreclosure and Trustee's Sale by these Defendants, and each of them, in the

12   future, so that the foreclosure and Trustee's Sale can be postponed until the

13   conclusion of this action.

14

15                              **SIXTH CAUSE OF ACTION**

16                *(For Fraudulent Concealment Against All Defendants)*

17       101.    Plaintiff hereby realleges and incorporates herein by this reference as

18   though set forth in full, the allegations of paragraphs 1 through 70, inclusive, herein,

19   and specifically repeats and re-alleges the allegations of the First Cause of Action

20   concerning RICO liability, the allegations of the Second Cause of Action for

21   operating a conspiracy in violation of RICO, the allegations of the Third Cause of

22   Action for slander of title, the allegations of the Fourth Cause of Action for wrongful

23   foreclosure, and the allegations of the Fifth Cause of Action for fraudulent

24   misrepresentation.

25       102.    As alleged in great detail herein, Defendants BANA, Mellon, CoreLogic,

26   SPS, Bayview and QLS, intentionally concealed and willfully failed to disclose to

27   Plaintiff, numerous material facts, including without limitation:

28

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL
FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

(A)    The Deed of Trust recorded against Plaintiff's Property in 2005, was false, fraudulent and *void ab initio*, and was and is of no legal force or effect, because the alleged nominee, MERS, was suspended and therefore had no legal authority to act;

(B)    The Assignment of Deed of Trust recorded on November 3, 2011, that purported to assign the security interest in Plaintiff's Property to Mellon, was *void ab initio* and therefore of no legal force or effect, because the Assignment was false, fraudulent and robo-signed with a forged "signature" of "Christopher Herrera," who personally admitted to Plaintiff that he (Herrera) did not sign that document and did not appear before a notary in Ventura, California, to attest to his "signature;"

(C)    BANA and Bank of America have for many years utilized CoreLogic as a document mill that has a pattern and practice of preparing "replacement" documents for lenders, such as the "Assignment," using robo-signed forged and/or falsified signatures, that are *void ab initio* and have no legal force or effect, when original loan documents have been "lost" or "misplaced," as part of the fraudulent and predatory lending and foreclosure practices by Bank of America, and formerly by Countrywide, that constitute a pattern of Racketeering activities, as alleged herein;

(D)    In the effort to avoid liability for such fraudulent use of robo-signed documents with forged signatures, BANA, Bank of America, Mellon, SPS, CoreLogic, Bayview and QLS have concealed from borrowers, and have even concealed from the Offices of the Recorder where such forged documents are recorded and from the courts, their knowledge that the "signatures" on such documents are forged and void, and therefore of no legal force or effect;

(E)    Because Plaintiff's Deed of Trust and the Assignment of Deed of Trust to Mellon, were and are false, fraudulent, legally invalid and of no force or effect, the recordation on May 19, 2014, of a Notice of Default, by QLS, at

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

the direction of Mellon and SPS, was *void ab initio* and therefore of no legal force or effect; and

(F) The subsequent recordation in July 2016, of a Notice of Trustee's Sale, by QLS, at the direction of Mellon and SPS, and the subsequent postponement of such sales and re-recording of new Notices of Trustee's Sale, by QLS, at the direction of Mellon, SPS and Bayview, also were and are false, fraudulent, legally invalid and of no force or effect, and specifically did not and do not constitute the lawful commencement of a non-judicial foreclosure proceeding or the lawful effort to foreclose on Plaintiff's Property through a Trustee's Sale.

103. The willful, intentional and fraudulent failure and refusal to disclose such material facts and instead to willfully conceal these material facts, was done by BANA, Mellon, CoreLogic, SPS, Bayview and QLS, and each of them, with the actual intent to deceive and defraud Plaintiff, and with the intent to fraudulently induce Plaintiff into accepting that these Defendants, and each of them, were legally entitled to foreclose on his Property, and to otherwise fraudulently induce Plaintiff into acting to his detriment in the manner alleged herein, in reliance thereon, without the knowledge that these material facts, and each of them, were false. By the intentional concealment of such material facts, these Defendants, and each of them, fraudulently induced Plaintiff into believing that first BANA and then Mellon had a valid and lawful security interest in the Property.

104. Plaintiff is informed and believes, and based thereon alleges, that by reason of the superior knowledge of these Defendants, and each of them, regarding the preparation and recordation of false, forged, fraudulent and void documents, and because these material facts were solely within the knowledge of these Defendants, and each of them, and could not otherwise have been discovered by Plaintiff, these Defendants, and each of them, had an affirmative duty and obligation to disclose and explain these material facts to Plaintiff.

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

105.   It was not until late 2014 that Plaintiff first discovered, based on multiple telephone conversations with Christopher Herrera and with officers and employees of CoreLogic, that BANA and Bank of America were using a document preparation mill in South Carolina to produce false, forged, fraudulent and void documents that purported to have legal validity but did not.  If Plaintiff had been aware of the existence of the suppressed information and material facts concealed and not disclosed, Plaintiff would not have acted as he did, would not have constructed a second residence on the Property, would have immediately sought to obtain a replacement loan from a lender other than Countrywide or BANA, would not have accepted and entered into the Loan Modification Agreement and/or would not have made the inflated payments demanded by BANA and/or SPS when BANA unilaterally and without notice paid $64,637.73 to the Orange Country Tax Collector while Plaintiff was successfully appealing the substantial increase in his property taxes.

106.   Beginning in February 2009 and continuing to the present, in reasonable and justifiable reliance upon the absence of knowledge of the material facts intentionally concealed by these Defendants, and each of them, Plaintiff was fraudulently induced into building a second residence on the Property, was fraudulently induced into entering into a Loan Modification Agreement which BANA and Countrywide, was fraudulently induced into executing a Deed of Trust that was knowingly void, invalid, illegal and unenforceable, and was fraudulently induced into accepting the void Assignment that has been utilized by these Defendants, and each of them, to commence foreclosure proceedings against Plaintiff's Property, and to otherwise be fraudulently induced into acting to his detriment in the manner herein alleged in reliance thereon.

107.   Plaintiff further asserts and alleges that so long as these Defendants, and each of them, who assisted them and/or participated in the concealment of these material facts and continued to conceal these material facts, any statute of limitations

that might otherwise have run or expired, as to Plaintiff, was and is equitably tolled as a result of such fraudulent conduct that was intended to, and did, conceal the facts and information needed by Plaintiff to discover the nature and extent of the fraud perpetrated against him.  In addition, or alternatively, and also as a result of such ongoing fraudulent acts and omissions by these Defendants, and each of them, they, and each of them, are equitably estopped from asserting any statute of limitations as a bar to these claims.

108.   As a direct and proximate result of such intentional concealment of material facts by BANA, Mellon, CoreLogic, SPS, Bayview and QLS, Plaintiff has suffered and incurred a pecuniary loss that is recoverable as damages in this action believed to be in excess of $1.5 million and expects to suffer and incur in the future, further and additional damages, in an amount that is not possible to ascertain.

109.   As a further direct and proximate result of such intentional misrepresentations and fraudulent acts by BANA, Mellon, CoreLogic, SPS, Bayview and QLS, Plaintiff is likely to suffer and incur irreparable damages that cannot be compensated with a money judgment, as a result of the illegal commencement of foreclosure proceedings by Defendants BANA, Mellon, QLS, SPS, CoreLogic and Bayview against Plaintiff's Property.   Based thereon, Plaintiff is entitled to temporary, preliminary and permanent injunctive relief against all Defendants and/or other provisional remedies, to enjoin and prevent such an improper, illegal and/or bad faith foreclosure and Trustee's Sale by these Defendants, and each of them, in the future, so that the foreclosure and Trustee's Sale can be postponed until the conclusion of this action.

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

<u>Request for Relief</u>

**WHEREFORE,** Plaintiff **SURAT SINGH**, an individual, prays for judgment against Defendants **BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ALTERNATIVE LOAN TRUST 2005-59, MORTGAGE PASS THROUGH CERTIFICATES, CORELOGIC, INC., SELECT PORTFOLIO SERVICING, INC., BAYVIEW LOAN SERVICING, LLC, BANK OF AMERICA, N.A., AND QUALITY LOAN SERVICE CORPORATION**, inclusive, as follows:

1.     On the First Cause of Action for operating and maintaining a racketeering enterprise, in violation of 18 U.S.C. § 1962(c), against all Defendants, jointly and severally, except Quality Loan Service Corporation, for an award of treble damages as consistent with 18 U.S.C. § 1964(c), compensatory and actual damages, reasonable attorneys fees, pre-judgment interest, post-judgment interest and costs, plus temporary, preliminary and permanent injunctive relief, to enjoin and prevent the continued foreclosure and Trustee's Sale of Plaintiff's Property;

2.     On the Second Cause of Action for conspiracy to engage in racketeering activities, in violation of 18 U.S.C. § 1962(d), against all Defendants, jointly and severally, except Quality Loan Service Corporation, for an award of treble damages as consistent with 18 U.S.C. § 1964(c), compensatory and actual damages, reasonable attorneys fees, pre-judgment interest, post-judgment interest and costs, plus temporary, preliminary and permanent injunctive relief, to enjoin and prevent the continued foreclosure and Trustee's Sale of Plaintiff's Property;

3.     On the Third Cause of Action for Slander of Title, against all Defendants, jointly and severally, for compensatory damages in the amount of not less than $1,500,000, representing the damage to Plaintiff's title from the recordation of false, invalid and unprivileged documents, plus additional damages in an amount not yet capable of being determined, subject to proof at the time of trial hereof, plus temporary, preliminary and permanent injunctive relief, to enjoin and prevent the

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**

continued foreclosure and Trustee's Sale of Plaintiff's Property on the basis of false and unprivileged documents, plus an Order requiring that such false and unprivileged documents be withdrawn, rescinded, vacated and/or otherwise declared to be void and of no further force or effect, plus punitive or exemplary damages in an amount appropriate to punish and make an example of these Defendants, and each of them;

4. On the Fourth Cause of Action for Wrongful Foreclosure, against all Defendants, jointly and severally, for compensatory damages in the amount of not less than $1,500,000, representing the damage to Plaintiff's title from the recordation of false, invalid and unprivileged documents, plus additional damages in an amount not yet capable of being determined, subject to proof at the time of trial hereof, plus temporary, preliminary and permanent injunctive relief, to enjoin and prevent the continued foreclosure and Trustee's Sale of Plaintiff's Property on the basis of false and unprivileged documents, plus an Order requiring that such false and unprivileged documents be withdrawn, rescinded, vacated and/or otherwise declared to be void and of no further force or effect, plus punitive or exemplary damages in an amount appropriate to punish and make an example of these Defendants, and each of them;

5. On the Fifth Cause of Action for Fraudulent Misrepresentation, against all Defendants, jointly and severally, for compensatory damages in the amount of not less than $1,500,000, representing the damage to Plaintiff from the attempted foreclosure and the potential loss of his Property in foreclosure, plus additional damages in an amount not yet capable of being determined, subject to proof at the time of trial hereof, plus temporary, preliminary and permanent injunctive relief, to enjoin and prevent the continued foreclosure and Trustee's Sale of Plaintiff's Property, plus punitive or exemplary damages in an amount appropriate to punish and make an example of these Defendants, and each of them.

6. On the Sixth Cause of Action for Fraudulent Concealment, against all Defendants, jointly and severally, for compensatory damages in the amount of not less than $1,500,000, representing the damage to Plaintiff from the attempted

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

foreclosure and the potential loss of his Property in foreclosure, plus additional damages in an amount not yet capable of being determined, subject to proof at the time of trial hereof, plus temporary, preliminary and permanent injunctive relief, to enjoin and prevent the continued foreclosure and Trustee's Sale of Plaintiff's Property, plus punitive or exemplary damages in an amount appropriate to punish and make an example of these Defendants, and each of them.

7.     For reasonable attorneys fees as may be awarded by the Court in its discretion by statute or agreement;

8.     For costs of suit;

9.     For such other and further relief as this Court deems just and equitable.

<u>Demand for Jury Trial</u>

Plaintiff hereby requests a jury trial on all issues raised in this complaint.

DATED: July 11, 2017              **FUCHS LAW GROUP, APC**

By: _____/s/ John R. Fuchs_____
JOHN R. FUCHS
GAIL S. GILFILLAN
Attorneys for Plaintiff **SURAT SINGH**

FUCHS LAW GROUP, APC
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

**COMPLAINT FOR VIOLATION OF RICO, SLANDER OF TITLE, WRONGFUL FORECLOSURE, FRAUD AND CONSPIRACY TO DEFRAUD**